IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| PHILLIP M. VELAZQUEZ, Institutional ID No. 175528, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CIVIL ACTION NO. 5:18-CV-069-M-BQ |
| LARRY DIAL, *et al.*, | ) ) ) ) | ECF |
| Defendants. | ) | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

### I.   Statement of the Case

Proceeding pro se and *in forma pauperis*, Plaintiff Phillip M. Velazquez filed this action under 42 U.S.C. § 1983 on February 22, 2018, alleging Defendants violated his constitutional rights while incarcerated at the Lubbock County Detention Center (LCDC). Compl., at 3–4.[1] (ECF No. 1). Velazquez, a pretrial detainee, claims Larry Dial and Michael Bates, detention response team (DRT) officers at LCDC, used excessive force against him on the night of December 18, 2017, and that the LCDC violated his rights during and after the incident. *Id.* He seeks "remedy and compensation for pain [and] suffering." *Id.*

Under Special Order No. 3-251, this case was automatically referred to the undersigned United States Magistrate Judge for further proceedings. The undersigned thereafter reviewed Velazquez's Complaint and authenticated records provided by Lubbock County. In addition, Velazquez completed and returned a questionnaire in accordance with *Watson v. Ault*, 525 F.2d

---

[1] Page citations to Velazquez's pleadings cite to the electronic page number assigned by the court's electronic filing system.

1

886, 892–93 (5th Cir. 1976). ECF Nos. 10, 11. Pursuant to Special Order No. 3-251, the undersigned makes the following findings and conclusions and recommends the action be dismissed in accordance with 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b).

## II.   Standard of Review

A court must dismiss a complaint filed *in forma pauperis* by a prisoner against a government entity or employee if the court determines that the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2) (2012); *see also* § 1915A(b) (applying section to any suit by a prisoner against certain governmental entities, regardless of whether the prisoner is proceeding *in forma pauperis*). A frivolous complaint lacks any arguable basis, either in fact or in law, for the wrong alleged. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A complaint has no arguable basis in fact if it rests upon clearly fanciful or baseless factual contentions, and similarly lacks an arguable basis in law if it embraces indisputably meritless legal theories. *See id.* at 327; *Geiger v. Jowers*, 404 F.3d 371, 373 (5th Cir. 2005). When analyzing a prisoner's complaint, the court may consider reliable evidence such as the plaintiff's allegations, responses to a questionnaire, and authenticated prison records. *See Wilson v. Barrientos*, 926 F.2d 480, 483–84 (5th Cir. 1991); *see also Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999) (explaining that responses to a questionnaire or testimony given during an evidentiary hearing are incorporated into the plaintiff's pleadings); *Banuelos v. McFarland*, 41 F.3d 232, 234 (5th Cir. 1995) (holding that courts may dismiss prisoners' *in forma pauperis* claims as frivolous based on "medical or other prison records if they are adequately identified and authenticated").

In evaluating the complaint's sufficiency, courts accept well-pleaded factual allegations as true but do not credit conclusory allegations or assertions that merely restate the claim's legal elements. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016), *cert. denied*, 137

2

S. Ct. 1339 (2017). And while courts hold pro se plaintiffs to a more lenient standard than lawyers when analyzing complaints, such plaintiffs must nevertheless plead factual allegations that raise the right to relief above a speculative level. *Id.* (citing *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002)).

### III. Velazquez's Claims

In his Complaint, Velazquez names LCDC and DRT officers Larry Dial and Michael Bates as Defendants. Compl., at 3. Because Velazquez alleges in his questionnaire that Sergeant Jeffrey Smith was involved in the picture-refusal incident described below, the court liberally construes Velazquez's Complaint as also asserting that claim against Sergeant Smith. Questionnaire, at 4–5 (ECF No. 11) (describing Smith's involvement and declaring: "I want to prosecute Larry Dial, Michael Bates, Jeffrey Smith and the [LCDC] for the excessive force, through the courts"). Velazquez claims that the DRT officers tackled him around 10:30 p.m. on December 18, 2017, when they responded to a call by Hector Ruiz that he was uncooperative in the unit. Compl., at 4–6. He alleges that LCDC "refused [him] pictures of [his] injuries" when Smith declined to take photographs of his bruises after the incident and that LCDC's failure to provide him with pictures after the use of force violated his constitutional rights. *Id.*; *see also* Questionnaire, at 4–5 (explaining that Smith's conduct was a "violation of [his] constitutional rights"). Velazquez further contends that Ruiz denied appropriate medical care by preventing him from accessing the pill line and improperly calling DRT. Questionnaire, at 3–4.

### IV. Discussion

**A. Velazquez fails to state a non-frivolous § 1983 claim against Officers Dial and Bates for excessive use of force.**

Velazquez alleges that Dial and Bates "slammed [him] to the floor using an unneccassary [sic] use of force" which injured his "forhead [sic] and lower back." Compl., at 4. According to

3

his pleadings, Velazquez was attempting to get in line for medication despite the inmates in his unit being instructed to return to their cells. *See id.* at 4–6; Questionnaire, at 1 (conceding that he did not return to his cell upon the initial order because he wanted to get in the pill line). Once he had made it to where the medication line would normally form, Ruiz again told Velazquez to return to his cell, but Velazquez refused. Questionnaire, at 1. Velazquez alleges that Ruiz then called "the response team" into the unit, and the response team, led by Dial and Bates, brought Velazquez to the floor and forcibly restrained him. Compl., at 6.

Video provided by Lubbock County in the authenticated records confirms Velazquez's version of events, with the following notable exceptions. Velazquez alleges that Ruiz's initial order to rack up did not include the pill line and that the pill line had not racked up when Ruiz called in the DRT officers. *See id.* at 6 (claiming that Ruiz ordered "the whole pod to rack up, not including pill call line"); Questionnaire, at 1 (alleging that when the DRTs were called in, "the whole pod was racked up 'except' pill call line" (original emphasis omitted)). The video shows Ruiz giving an order and all inmates—including those standing in a line, presumably the pill call line, at one corner of the room—beginning to return to their cells. Velazquez, however, was standing at the opposite side of the room from the line when the order was given; he gets a water bottle from someone off-camera and starts to fill it with water at the island while everyone else is racking up. Velazquez begins walking toward the corner of the room where the line had been *only after* the inmates who were lined up had already started returning to their cells. Velazquez is the only inmate still in the room when Ruiz notices him, motions and tells him again to return to his cell, and then calls in the DRT to control an uncooperative inmate. The video clearly demonstrates that: (1) the pill call line disbursed upon Ruiz's original order; (2) Velazquez disregarded the order; and (3) Velazquez ignored Ruiz's subsequent order to return to his cell.

4

Velazquez has failed to allege facts sufficient to state a non-frivolous claim for relief as a pretrial detainee under the Fourteenth Amendment. The United States Supreme Court has recognized that a pretrial detainee's use of force claim arises under the Fourteenth Amendment, and "that a pretrial detainee must show only that the force purposefully and knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015) (abrogating lower courts' application of Eighth Amendment excessive force standards in *Hudson v. McMillian*, 503 U.S. 1 (1992) to pretrial detainees). "[O]bjective reasonableness turns on the 'facts and circumstances of each particular case.'" *Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). The reasonableness of the force used must be assessed "from the perspective and with the knowledge of the defendant officer" and with "deference to policies and practices needed to maintain order and institutional security." *Id.* at 2474. In determining the objective reasonableness of an officer's use of force, a court should consider the following non-exclusive factors: (1) the relationship between the need for the use of force and the amount of force used; (2) the extent of the plaintiff's injury; (3) any effort made by the officer to temper or limit the amount of force; (4) the severity of the security problem at issue; (5) the threat reasonably perceived by the officer; and (6) whether the plaintiff was actively resisting. *Id.* at 2473.

Velazquez alleges in his Complaint that Ruiz, the commanding officer of the unit, told everyone to "rack up"—that is, go back to their cells—around 10:30 p.m. on December 18, 2017. Compl., at 6. Velazquez further contends that he was standing near "cell 210" when this command was given and, rather than returning to his cell, he "proceed[ed] to the island" to get water. *Id.* According to Velazquez, when he did not rack up, Ruiz asked him why he did not. *Id.* Velazquez responded by explaining that he needed to get in the pill line; nevertheless, Ruiz again instructed him to head to his cell. *Id.* Velazquez admits that, because he refused to comply with the officer's

orders, Ruiz called in the response team, including Bates and Dial, who subsequently restrained him. *Id.*

In his responses to the questionnaire, Velazquez claims that he was not uncooperative because he was trying to get medicine and the order to rack up did not apply to inmates who were in the pill line. Questionnaire, at 1. Importantly, despite denying that he failed to cooperate, Velazquez admits that he was not in the medicine line or heading to his cell after the first command to rack up, and he did not head back to his cell even after Ruiz gave the order a second time, proceeding instead to where the medicine line had been. The video footage of the event confirms that Velazquez was across the room from the pill line when the order was given to rack up; that he proceeded to the island to get water; and that he went to the medicine line after everyone else headed to their cells.

It is clear from the facts alleged that Velazquez refused to follow an order to return to his cell on at least two occasions and that, as a result, such refusal justified some use of force by the officers to bring him into compliance. *See Calhoun v. Wyatt*, No. 6:11CV4, 2013 WL 1882367, at *6 (E.D. Tex. May 2, 2013) (noting that inmate's refusal to obey orders "set the stage for the use of force"). Disobeying orders poses a threat to the order and security of the prison as an institution. *Bourne v. Gunnels*, No. CV H-16-0515, 2017 WL 2483815, at *10 (S.D. Tex. June 7, 2017); *Minix v. Blevins*, CA No. 6:06-306, 2007 WL 1217883, at *24 (E.D. Tex. Apr. 23, 2007) (citation omitted) (recognizing that even where prisoner believes order to be unjustified or improper, such belief does not give him the right to disobey at his whim); *Rios v. McBain*, Civ. No. A504CV84, 2005 WL 1026192, at *7 (E.D. Tex. April 28, 2005) (noting that "open defiance of orders plainly poses a threat to the security of the institution, regardless of whether or not the defiance is emanating from within a locked cell").

6

In determining whether the force applied exceeded constitutional limits, the court must examine whether the use of force was objectively reasonable from the perspective of the officers who responded. *Kingsley*, 135 S. Ct. at 2474. Velazquez admits and video confirms that Dial and Bates, as part of the DRT, entered the unit due to Velazquez's refusal to follow Ruiz's orders. Upon entry, they saw Velazquez, still standing outside of his cell and not attempting to comply. As a result, they applied force to obtain compliance with Ruiz's order. From the Defendants' perspective, Velazquez's failure to cooperate with officers' commands threatened the institution's order, which justified the use of some force to bring him into compliance. Thus, the first, fifth, and sixth *Kingsley* factors (i.e. the threat to institutional order reasonably perceived by the officer, plaintiff's active resistance, and the relationship between the need for the use of force and the amount of force used) weigh in favor of finding that the force used by Dial and Bates was objectively reasonable. *See id.* at 2473.

Counterbalanced against these considerations are the third and fourth *Kingsley* factors (i.e. any effort made by the officer to temper or limit the amount of force and the severity of the security problem at issue), which, accepting Velazquez's factual allegations as true, arguably weigh in favor of allowing his claim of unreasonable use of force to proceed. *See id.* Velazquez claims that Dial and Bates "tackled [him] from the side and slammed [him] for no neccassary [sic] reason." Compl., at 6. According to Velazquez's account, he "was not being hostile nor breaking any rules," and Dial and Bates allegedly made little or no effort to limit the amount of force used against him, approaching Velazquez in the same way they would if he were violent or hostile. From Velazquez's allegations and the video footage of the event, although he blatantly disregarded Ruiz's order while all other inmates returned to their cells, it does not appear that Velazquez was armed, acting erratically, or posing any specific danger to Ruiz, other than by refusing to return to

his cell. Thus, consideration of the third and fourth *Kingsley* factors possibly favors allowing Velazquez's claim to proceed. *See id.*

In the court's view, however, the second *Kingsley* factor (i.e. the extent of plaintiff's injury), considered in aggregation with the other criteria, ultimately resolves this question in favor of Dial and Bates. Although no particular quantum of injury is required to state a claim for excessive use of force (*Wilkins v. Gaddy*, 599 U.S. 34, 37 (2010)), the extent of injury is an important factor courts assess in determining whether the amount of force used on a pretrial detainee was reasonable. *See Kingsley*, 135 S. Ct. at 2473. Courts routinely dismiss cases where the complaint alleges nothing more than *de minimis* injury. *See, e.g.*, *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997) (affirming district court's dismissal of plaintiff's claims for excessive force where injury consisting of "a sore, bruised ear lasting for three days" was *de minimis*); *Young v. Saint*, No. 92-8420, 1993 WL 117991, at *3 (5th Cir. Mar. 31, 1993) (affirming order dismissing complaint pursuant to 28 U.S.C. § 1915 where injuries consisting of "an undetermined amount of blood and [ ] two small 'scratches'" were *de minimis*); *Hodge v. Williams*, Civil Action No. 4:08-CV-330- Y, 2009 WL 111565, at *3 (N.D. Tex. Jan. 16, 2009) (finding as *de minimis* inmate's claimed injuries of "cuts on his hand," a cut inside his lip, and a sore neck); *Dale v. Officer Bridges*, No. 3:96-CV-3088-AH, 1997 WL 810033, at *3 (N.D. Tex. Dec. 22, 1997) ("Plaintiff's alleged injury—a swollen, black eye which lasted only a few days—does not satisfy the 'some injury' requirement of an excessive force claim."). In this case, Velazquez claims that he suffered bruises on his forehead and lower back and soreness in his neck, which later led to headaches. After refusing medical treatment immediately after the incident, he sought medical attention the next day, and the medical staff prescribed ibuprofen. Velazquez does not allege, and the medical records do not indicate, that he suffered any injury beyond these initial complaints, which

constitute nothing more than *de minimis* injury. *See Siglar*, 112 F. 3d at 193 (bruises and associated pain were *de minimis*); *Dale*, 1997 WL 810033, at *3 (black eye was *de minimis*).

In short, weighing the factors set forth in *Kingsley* and particularly the minimal physical injury allegedly sustained, within the context of preserving institutional order and Velazquez's refusal to comply with commands, Velazquez's pleadings and questionnaire responses fail to establish that the alleged use of force was objectively unreasonable. Accordingly, Plaintiff's unreasonable use of force claim against Officers Dial and Bates should be dismissed as frivolous and for failure to state a claim.

> **B. Velazquez's allegation that LCDC failed to take pictures of his injuries does not state a claim upon which relief can be granted, and LCDC is not a suable entity.**

Velazquez claims that LCDC "refused [him] pictures of [his] injuries." Compl., at 3. In his Complaint and questionnaire responses, Velazquez alleges that Sergeant Jeffrey Smith did not take pictures of his bruises or have his body camera on during or after the incident. *Id.* at 3–4; Questionnaire, at 4. While he does not specify which constitutional right(s) this incident may have violated, Velazquez mentions in the questionnaire that, "in situations like this Body cams must be utalized [sic] for evidence." Questionnaire, at 4.

Assuming, without deciding, that LCDC has a policy for creating and maintaining evidence, at best Velazquez alleges a claim that Smith's actions in contravention of the policy violated his due process rights. The Fifth Circuit and this court have held that a violation of prison regulations alone does not breach an inmate's due process rights. *See Giovanni v. Lynn*, 48 F.3d 908, 912 (5th Cir. 1995) (noting that "[m]ere failure to accord the procedural protections called for by state law or regulation does not of itself amount to a denial of due process"); *Reyes v. Hale Cty. Jail*, 5:03-CV-180, 2003 WL 22670929, at *2 (N.D. Tex. Sept. 16, 2003) (citing *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996)) (holding that "mere failure of prison authorities to

follow prison rules and regulations does not, without more, give rise to a constitutional violation"). As pleaded, Velazquez's allegation that LCDC and Smith violated policy by refusing to take or provide him with pictures or video footage does not constitute a claim under the Constitution through 42 U.S.C. § 1983. This claim should therefore be dismissed as against both Defendants.

Alternatively, even if Velazquez had alleged sufficient facts to properly state a claim against LCDC, LCDC is a subdivision of the state of Texas that cannot sue or be sued. *See Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313–14 (5th Cir. 1991); *Plemons v. Amos*, 2:03-CV-421, 2006 WL 1710415, at *7 (N.D. Tex. June 22, 2006), *aff'd*, 306 F. App'x 160 (5th Cir. 2009). In addition, LCDC is not liable for the actions of its employees because 42 U.S.C. § 1983 does not impose vicarious liability. *Bigford v. Taylor*, 834 F.2d 1213, 1220 (5th Cir. 1988). LCDC therefore cannot be held liable for this incident, even if Smith's conduct violated Velazquez's constitutional rights.

### C. Velazquez fails to state a claim for relief against Ruiz for denial of medical treatment.

While Velazquez does not explicitly name Hector Ruiz as a Defendant in his Complaint or questionnaire, he alleges that Ruiz refused him his "medical ointment during pill call" and "made a bad judgement by calling in an uncorrapative [sic] without [him] knowing." Questionnaire, at 3–4. To the extent Velazquez's claim may be construed as one for deliberate indifference to his medical needs, this claim also lacks merit.

Whether an individual is considered a pretrial detainee or a convicted inmate, government officials violate a prisoner's federal constitutional rights only where they respond with deliberate indifference to his serious medical needs.[2] *See Thompson v. Upshur Cty.*, 245 F.3d 447, 457 (5th

---

[2] As a pretrial detainee at the time in question, Velazquez's rights arise under the Fourteenth Amendment, not the Eighth Amendment. *See Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir. 1996) (en banc) (stating that pretrial detainee's rights "flow from both the procedural and substantive due process guarantees of the Fourteenth Amendment"). Since, however, basic human needs (such as medical care) are the same for pretrial detainees and

10

Cir. 2001). Allegations of malpractice, negligence, or unsuccessful treatment fail to establish deliberate indifference. *Gobert v. Caldwell,* 463 F.3d 339, 346 (5th Cir. 2006). Similarly, an inmate's disagreement with the medical treatment provided does not give rise to a constitutional claim (*Norton v. Dimazana,* 122 F.3d 286, 292 (5th Cir. 1997)), and a delay in delivering medical care creates constitutional liability only where the alleged deliberate indifference results in substantial harm. *Mendoza v. Lynaugh,* 989 F.2d 191, 193 (5th Cir. 1993). In sum, an inmate must demonstrate that officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in similar conduct that would clearly evince a wanton disregard for any serious medical needs" to state a viable constitutional claim for deliberate indifference to serious medical needs. *Johnson v. Treen,* 759 F.2d 1236, 1238 (5th Cir. 1985).

Velazquez has not pleaded sufficient facts to demonstrate deliberate indifference by Ruiz as to his medical needs. His bare allegation that Ruiz would not let him get medicine after he had ordered all inmates in the unit to return to their cells does not "clearly evince a wanton disregard for any serious medical needs," and Velazquez's pleadings are bereft of any claim that the deprivation of this medicine caused—or even contributed to—any injury, let alone "substantial harm." *See id.*; *Mendoza,* 989 F.2d at 193. As discussed above, the injuries allegedly suffered were minor, and Velazquez does not claim any resulting harm from a lack of medicine or medical care. Because Velazquez has failed to allege facts sufficient to state claims upon which relief can be granted against Ruiz, these claims should be dismissed.

V. **Recommendation**

For the foregoing reasons, the undersigned recommends that the United States District Court dismiss Velazquez's Complaint with prejudice in accordance with 28 U.S.C.

---

convicted inmates, courts apply the same standard under either amendment. *Gibbs v. Grimmette,* 254 F.3d 545, 548 (5th Cir. 2001).

11

§§ 1915(e)(2)(B) and 1915A(b). Such dismissal will count as a "strike" or "prior occasion" within the meaning of 28 U.S.C. § 1915(g).[3]

## VI.   Right To Object

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2016); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding, conclusion, or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Findings, Conclusions, and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated: September __10__, 2018

_____
D. GORDON BRYANT, JR.
UNITED STATES MAGISTRATE JUDGE

---

[3] Section 1915(g), which is commonly known as the "three-strikes" provision, provides:
> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section, if the prisoner has, on 3 or more occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.